IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| BRANDON T. KRIVEC,<br><br>Plaintiff,<br><br>vs.<br><br>NURSE ROSCOE, et al.,<br><br>Defendants. | Cause No. CV 09-00075-BLG-RFC-CSO<br><br><br>FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment.  (Court Doc. 21).  Defendants provided Plaintiff Brandon Krivec the Notice and Warning as required by Local Rule 56.2. (Court Doc. 24).  Krivec did not respond to Defendants' Motion.

## I. STATEMENT OF THE CASE

### A.    Parties

Krivec was incarcerated at the Yellowstone County Detention Facility in Billings, Montana, at the time he filed his Complaint. Although the Court instructed Krivec to clarify whether he was a

pretrial detainee or a convicted prisoner at the time of the incidents alleged in the Complaint, he did not do so.  Krivec was released from custody on April 19, 2010.  (Court Doc. 19).

In his Amended Complaint, Krivec named Nurse Roscoe, Nurse Welch, Nurse Owens, Lieutenant Neiter, and Officer Shirley.  All Defendants are employees of Yellowstone County Detention Facility.

## B.  Krivec's Amended Allegations

Krivec's Amended Complaint alleged he had urinary problems and pain for months.  He contends he sent medical kites explaining his problems and pain to the medical staff at the Yellowstone County Detention Facility but no action was taken.  His problems grew, causing extreme pain while urinating and constant ache and irritation. He contends Nurses Roscoe, Welch, and Owens were indifferent to his pain and medical problems.  On May 27, 2009, Nurse Roscoe gave him medication but she did not tell him the name of the medication.  He complains Nurse Roscoe yelled at him, used profanity, failed to tell him the name of a medication when he asked, and told him to take

medication of unknown purpose and effect.

Krivec contends Lieutenant Neiter reviewed all his medical issues and grievances and approved the responses given by medical staff.  He contends zero action was taken and his pain, anxiety, stress, and emotional duress increased as a result.

Krivec alleges Officer Shirley made derogatory comments and broadcasted to the jail pod that Krivec had herpes and "hepa-gonna-syphill-AIDS."  He also said Krivec was in the "Cho-mo pod" and "I hope your dick falls off."  (Court's Doc. No. 7: Amended Complaint, p. 8).  Krivec contends Shirley displayed a "bestial level of unprofessional and illegal behavior by making crude jokes to Nurse Roscoe and potentially other inmates about [Krivec's] personal medical issues."

Lastly, Krivec alleges Officer Shirley put him into disciplinary, 23-hour lock-down between May 5, 2009, and May 27, 2009.  He contends all his belongings, including sheets, blankets, hygiene items, and toilet paper were taken.

## II.  SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if they can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  That is, where the documentary evidence permits only one conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, it believes demonstrate the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but  . . .  must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248.  The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories,

and admissions.  Id.  Only disputes over facts that might affect the

outcome of the suit under the governing law are "material" and will

properly preclude entry of summary judgment.  Id.

At the summary judgment stage, the judge's function is not to

weigh the evidence or determine the truth of the matter, but to

determine whether there is a genuine issue for trial.  If the evidence is

merely colorable or is not significantly probative, summary judgment

may be granted.  Anderson, 477 U.S. at 249-50.

> The mere existence of a scintilla of evidence in support of
> the [non-moving party's] position will be insufficient; there
> must be evidence on which the jury could reasonably find for
> the [non-moving party].  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors could find by a
> preponderance of the evidence that the plaintiff is entitled to
> a verdict.

Anderson, 477 U.S. at 252.

In the context of a motion for summary judgment where a litigant

is proceeding pro se, the court must construe pro se documents liberally

and afford the pro se litigant the benefit of any doubt.  Erickson v.

Pardus, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); Baker v.

<u>McNeil Island Corrections Ctr.</u>, 859 F.2d 124, 127 (9th Cir. 1988).

Krivec did not file a response to Defendants' Motion for Summary Judgment.  Local Rule 7.1(d)(1)(B) provides that a failure to file an opposing brief may be deemed an admission the motion is well taken.  But, the Ninth Circuit has held that a district court may not rely on its local rule as a basis for granting summary judgment.  "[A] nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law."  <u>Martinez v. Stanford</u>, 323 F.3d 1178 (9th Cir. 2003).

Accordingly, the Court will review Defendants' Motion to determine whether they met their burden and are entitled to summary judgment.

## III.   STATEMENT OF UNDISPUTED FACTS[1]

---

[1]The Court has utilized Defendants' Statement of Undisputed Facts in formulating this statement of facts as Krivec did not respond and did not file a Statement of Genuine Issues as required by Local Rule 56.1(b). Because Krivec neither submitted his own statement of disputed facts nor

Krivec was detained in the Yellowstone County Detention Facility from April 28, 2009, to October 15, 2009, when he was transferred to Montana State Prison. (Court Doc. 25–McCave Affidavit).  Krivec was originally placed in Class A at the Yellowstone County Detention Facility because he was a convicted sex offender and said he needed to be kept separate from other detainees for safety and security.  (Court Doc. 25–McCave Affidavit; Court Doc. 28–Exhibit 4:  Request for Admission No. 19).  As a result of Krivec's complaints about Class A, he was moved to Class B, the medical unit. (Court Doc. 25–McCave Affidavit; Court Doc. 28–Exhibit 4:  Request for Admission No. 20).

On May 5, 2009, Krivec's property was taken from his cell because he was throwing wet paper "bombs" at Yellowstone County Detention Facility staff after repeatedly being told to stop.  (Court Doc. 25–McCave Affidavit; Court Doc. 28–Exhibit 4:  Request for Admission

---

addressed Defendants' statement of undisputed facts, the Court accepts Defendants' version of the facts where Krivec's verified Amended Complaint is not contradictory.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - CV-09-00075-BLG-RFC-CSO / PAGE 7

No. 21).  Krivec's property was returned to him by May 9, 2009.  (Court
Doc. 25–McCave Affidavit; Court Doc. 28–Exhibit 4:  Request for
Admission No. 22).  Krivec was never denied any essentials necessary
for his safety and basic hygiene.  (Court Doc. 26–Shirley Affidavit).

While incarcerated at the Yellowstone County Detention Facility
Krivec failed to follow the Facility's rules by, among other things,
causing floods, being disruptive, and not following staff's instructions,
which resulted in disciplinary action against him.  (Court Doc.
25–McCave Affidavit; Court Doc. 28–Exhibit 4:  Request for Admission
No. 23).

Officer Shirley never disclosed any of Krivec's medical conditions
to other inmates.  (Court Doc. 26–Shirley Affidavit).  While
incarcerated at the Yellowstone County Detention Facility, Krivec was
prescribed Bactrim for a urinary infection. (Court Doc. 28–Exhibit 4:
Request for Admission No. 10).  Krivec's symptoms improved as a
result of taking Bactrim. (Court Doc. 28–Exhibit 4:  Request for
Admission No. 11).  Additionally, Dr. George Sheckleton prescribed

Krivec doxycycline for possible prostatitis.  (Court Doc. 28–Exhibit 4: Request for Admission No. 12).

While incarcerated at YCDF, Krivec was given Benadryl to treat symptoms related to allergies.  (Court Doc. 27–Kydland Affidavit; Court Doc. 28–Exhibit 4:  Request for Admission No. 13).  Krivec was also given Tums and Prilosec for symptoms related to heartburn.  (Court Doc. 27–Kydland Affidavit; Court Doc. 28–Exhibit 4:  Request for Admission No. 14).  Krivec was informed by Yellowstone County Detention Facility staff as to what medications were prescribed to him. (Court Doc. 27–Kydland Affidavit; Court Doc. 28–Exhibit 4:  Request for Admission No. 15).

Krivec's symptoms improved as a result of the medication prescribed to him by Yellowstone County Detention Facility staff. (Court Doc. 28–Exhibit 4:  Request for Admission No. 16).  Krivec has not been diagnosed as suffering from any sexually transmitted disease. (Court Doc. 28–Exhibit 4:  Request for Admission No. 17).

YCDF staff monitored Krivec and gave him over-the-counter

medication.  (Court Doc. 27–Kydland Affidavit).  Krivec complained of various ailments throughout his incarceration and was visited, assessed, and treated by YCDF medical staff including Dr. George Sheckleton, licensed practical nurse Kate Kydland, and others.  (Court Doc. 27–Kydland Affidavit).  Krivec often complained that the doses of medication he was receiving were not enough and demanded higher doses.  (Court Doc. 27–Kydland Affidavit).  Krivec never developed a serious or life-threatening condition while incarcerated at YCDF and left the facility in good physical condition.  (Court Doc. 27–Kydland Affidavit).

## IV.  ANALYSIS

### A.  Denial of Medical Care

It is unclear whether Krivec was a convicted prisoner or a pretrial detainee at the times relevant to his Amended Complaint.  A pretrial detainee has not been convicted of a crime, but has only been arrested.  Therefore, a pretrial detainee's right to adequate medical care derives from the substantive Due Process Clause of the Fourteenth

Amendment rather than the Eighth Amendment's protection against cruel and unusual punishment.  <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1187 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775 (2003); <u>see also Bell v. Wolfish</u>, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998); <u>Carnell v. Grimm</u>, 74 F.3d 977, 979 (9th Cir. 1996).

Krivec did not clarify whether he was a pretrial detainee or a convicted prisoner at the time giving rise to the allegations in his Amended Complaint.  That distinction, however, at least with regard to Krivec's medical care claims, is not critical here.  "Because pretrial detainee's rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment" the same standards apply.  <u>Frost</u>, 152 F.3d at 1128.

The Eighth Amendment requires that prisoners receive adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>see also</u> <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on</u>

other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th

Cir. 1997).  To state an arguable section 1983 claim for failure to

provide medical care, a prisoner must allege a defendant's "acts or

omissions [were] sufficiently harmful to evidence a deliberate

indifference to serious medical needs." Estelle, 429 U.S. at 106;

Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).

Deliberate indifference under the Eighth Amendment involves the

consideration of two elements:  "[1] the seriousness of the prisoner's

medical need[;] and [2] the nature of the defendant's response to that

need." McGuckin, 974 F.2d at 1059; see also Lolli v. County of Orange,

351 F.3d 410, 419 (9th Cir. 2003).  That is, a plaintiff must demonstrate

"'objectively, sufficiently serious' harm and that the officials had a

'sufficiently culpable state of mind' in denying the proper medical care.

Thus, there is both an objective and a subjective component to an

actionable Eighth Amendment violation." Clement v. Gomez, 298 F.3d

898, 904 (9th Cir. 2002)(citing Wallis v. Baldwin, 70 F.3d 1074, 1076

(9th Cir. 1995)).

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT -
CV-09-00075-BLG-RFC-CSO / PAGE 12

The objective component of deliberate indifference requires the showing of a serious medical need. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104); see also Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." Frost, 152 F.3d at 1128 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost, 152 F.3d at 1128 (quoting Wilson v. Seiter, 501 U.S.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - CV-09-00075-BLG-RFC-CSO / PAGE 13

294, 302-303 (1991)).  "This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  <u>Jett</u>, 439 F.3d at 1096 citing <u>McGuckin</u>, 974 F.2d at 1060.  "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  <u>Id.</u>

The undisputed records produced by Defendants indicate that Krivec first complained about potential medical issues on May 11, 2009 when he asked to be tested for sexually transmitted diseases.  (Court Doc. 28-2, p. 32).  He was referred to the public health nurse.  On May 14, 2009, he complained he was having difficulty urinating, that it was painful and he had cloudy urine.  (Court Doc. 28-2, p. 31).  The response was that a urinalysis would be done.  A May 27, 2009 urinalysis report indicates Krivec was prescribed bactrim for seven days. (Court Doc. 28-2, p. 37).

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - CV-09-00075-BLG-RFC-CSO / PAGE 14

On May 22, 2009, Krivec sent a medical request indicating he was having allergy issues.  (Court Doc. 28-2, p. 30).

On June 1, 2009, Krivec filled out an inmate complaint form indicating he was taking medication for something he did not know what was, that he was still having problems, and was not told the name of the medication he was given.  (Court Doc. 28-2, p. 35).  On June 3, 2009, Nurse Owens responded, "We don't have a diagnosis other than we know you have an infection because of the UA that was done on you.  You have been treated with Bactrim it is used for infections such as skin and multiple other infections.  This medication was prescribed for you on May 27, 2009.  I will retest your UA for any other problems."  (Court Doc. 28-2, p. 35).

On June 2, 2009, Krivec complained he was not getting the medical attention he needed.  He stated he was breaking out in hives for which the Benadryl he was given was not helping.  (Court Doc. 28-2, p. 36).  On June 3, 2009, Nurse Owens responded again that he was given Bactrim for his infection on May 27, 2009, and Benadryl for his

hives.  Nurse Owens indicated they would redo the UA and set him up to get Benadryl at bedtime.  (Court Doc. 28-2, p. 36).

A urinalysis worksheet dated June 18, 2009, indicates a second urinalysis was done.

The undisputed medical records from the Yellowstone County Detention Facility indicate Krivec sought medical attention for his urination problem and allergy issues.  Detention Facility staff responded by giving Krivec Benadryl, ordering a urinalysis and ultimately prescribing Bactrim to treat any possible infection.  When Krivec complained again within a week, a second urinalysis was done.

Under these undisputed facts, there is no evidence of deliberate indifference to a serious medical need.  Defendants Owens and Welch were not ignoring Krivec's medical issues but rather the undisputed evidence demonstrates they were attempting to treat each of his aliments.  Summary judgment for Defendants Owens and Welch is appropriate.

## B.  Disclosure of Medical Information

Krivec also alleged that Officer Shirley disclosed inaccurate medical information about him.  Specifically he contends Officer Shirley broadcasted to the jail pod that Krivec had herpes and "hepa-gonna-syphill-AIDS" and that Krivec was in the "Cho-mo pod."  (Court's Doc. No. 7: Amended Complaint, p. 8).  There is no indication Krivec had herpes, AIDS, or any sexually transmitted disease.

Defendants argue that Officer Shirley denies that he broadcast any of Krivec's medical conditions to other inmates and Krivec did not respond to discovery on the issue.  They argue that Krivec cannot create an issue of fact with "mere conclusory statements unsupported by evidence."  (Court Doc. 23, p. 14).  Krivec states in his verified complaint that Officer Shirley made these statements to the entire jail.

This claim was construed in the Court's initial prescreening order as a "disclosure of personal medical issues claim."  (Court. Doc. 8, p. 5). The Ninth Circuit and the United States Supreme Court have not specifically recognized a generalized constitutional right to privacy in medical records.  See Seaton v. Mayberg, 610 F.3d 530 (9th Cir.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - CV-09-00075-BLG-RFC-CSO / PAGE 17

2010)("prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them") discussing <u>Whalen v. Roe</u>, 429 U.S. 589, 599-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

Two circuits have recognized a constitutional right to privacy in medical records, but both involved the purposeful dissemination of intensely private medical information about the complaining inmates. <u>See Doe v. Delie</u>, 257 F.3d 309, 317 (3d Cir. 2001); <u>Powell v. Schriver</u>, 175 F.3d 107, 112 (2d Cir. 1999).  The difference in this case is Officer Shirley was not disclosing private medical information.  It is now undisputed that Krivec did not have any of the medical conditions Officer Shirley is alleged to have  broadcasted.  (Court Doc. 28–Exhibit 4:  Request for Admission No. 17).  Thus, there was no violation of privacy as Shirley was not disclosing private medical information.

Officer Shirley's alleged actions are at most verbal harassment which does not constitute a constitutional violation.  Verbal harassment or abuse alone is not sufficient to state a constitutional

deprivation under 42 U.S.C. § 1983.  <u>Oltarzewski v. Ruggiero</u>, 830 F.2d

136, 139 (9th Cir.1987) (citation omitted).  But verbal harassment

calculated to cause and causing psychological damage may violate the

Constitution.  <u>See Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996)

(no evidence presented that "disrespectful and assaultive comments"

were unusually gross even for a prison setting and were calculated to

and did cause psychological  damage); <u>see also Somers v. Thurman</u>, 109

F.3d 1614, 622 n. 5 (9th Cir. 1997) (the purposeful subjection of

prisoners to verbal assaults during strip searches performed by officials

of the other sex serves no administrative purpose and might present a

question under the Fourth Amendment).

Here there is no allegation of psychological damage.  Krivec did

not respond to discovery or to Defendants' Motion and as such, the

Motion for Summary Judgment should be granted on this claim.

## C.  Conditions of Confinement

Krivec also raised a claim that he was held in lock-down with no

property, sheets, blankets, hygiene supplies, or toilet paper between

May 5, 2009 and May 27, 2009.  Krivec brings these conditions-of-confinement claims under both the Fourteenth and the Eighth Amendments.  (Court Doc. 7, p. 9).  As set forth above, it is unclear whether Krivec was a pretrial detainee or a convicted prisoner at the time of the events at issue.[2]  The Court will presume that he was a pretrial detainee for purposes of this analysis.

Pretrial detainees are protected entirely from "punishment" under the Fourteenth Amendment, while convicted prisoners are protected only from "cruel and unusual punishment" by the Eighth Amendment. See Anderson v. County of Kern, 45 F.3d 1310, 1313, amended by, 75 F.3d 448 (9th Cir. 1995).  Due process requires that pretrial detainees not be punished, as they have not been convicted, and therefore due process is violated if conditions of confinement equate with punishment.  Bell v. Wolfish, 441 U.S. 520, 537-39, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  The Court must determine if the conditions accompanying pretrial detention are "imposed for the purpose of

---

[2]It would have been very helpful to the Court if the Defendants' motion had clarified why Krivec was in custody.

punishment or whether [they are] but an incident of some other legitimate governmental purpose." <u>Bell</u>, 441 U.S. at 538.  "For a particular government action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." <u>Demery v. Arpaio</u>, 378 F.3d 1020, 1029 (2004).

For a "harm or disability" to be cognizable under the constitution, it "must either significantly exceed, or be independent of, the inherent discomforts of confinement." <u>Demery</u>, 378 F.3d at 1030.  In the Ninth Circuit, the second prong of the test can be demonstrated by showing that the conditions are "expressly intended to punish" or that the conditions serve a non-punitive purpose but are excessive in relation to that purpose.  <u>Jones v. Blanas</u>, 393 F.3d 918, 932 (9th Cir. 2004).  Out of abundance of caution, the Court will construe Krivec's claims under the Fourteenth Amendment standard.

Krivec's Amended Complaint indicates he was deprived of his property from May 5, 2009 to May 27, 2009.  In contrast, the

Yellowstone County Detention Facility's Prisoner Progress Report

indicates Krivec was placed in a stripped cell on May 5, 2009, and on

May 9, 2009, he was moved into a different cell and given the "rest of

his property."  (Court Doc. 28-3, pp. 1-2).  Given the undisputed

documentary evidence presented by Defendants the Court will assume

Krivec was denied his property only from May 5, 2009 to May 9, 2009.

During that period, Krivec alleges Officer Shirley took all his

belongings and he was left with "zero property, no sheets or blankets,

and no hygiene supplies at all."  He also contended his toilet paper was

confiscated.  (Court Doc. 7, p. 9).  Officer Shirley testified that Krivec

was not denied the essentials necessary for safety, comfort, and basic

hygiene such as clothes, a bed, and sanitary items.  (Court Doc. 26, p. 2,

¶ 6).

Taking the facts in the light most favorable to Krivec, it appears

he was placed in a cell for four days with clothes and a bed, but no

sheets, no blankets, and no hygiene items including toilet paper.

Krivec presented no allegations and no evidence that he suffered any

harm or disability as a result of his placement in the stripped cell.
While it was presumably uncomfortable, there has been no showing
that it significantly exceeded the inherent discomforts of confinement.

The Court has concerns about Defendants' reference to Krivec's
placement in the stripped cell as being "disciplinary action." (Court
Doc. 25–McCave Affidavit; Court Doc. 28–Exhibit 4: Request for
Admission No. 23). As set forth above, if the placement in the stripped
cell was done for purely punitive reasons, there could be a Fourteenth
Amendment violation. But the testimony submitted in support of the
motion suggests the placement in the stripped cell and the removal of
the property was done for management purposes. It is undisputed that
Krivec was throwing wet paper "bombs" at staff, was causing flooding,
and being disruptive. (Court Doc. 22, p. 2). The jail must be provided
some latitude in promoting safety and managing the detention facility
environment. See Anderson, 45 F.3d 1310. Krivec produced no
evidence that Defendants exaggerated their response in maintaining
security, order, and operation of the facility. Thus, there is insufficient

evidence to suggest the placement in the stripped cell was done purely as punishment and not for a legitimate non-punitive purpose.

## V.  CONCLUSION

Krivec's claims against Defendants are insufficient to survive summary judgment.  Krivec failed to produce sufficient evidence to overcome the undisputed evidence and medical testimony presented by Defendants.

### A.  "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim.  28 U.S.C. § 1915(g).  The Court should designate this case as a "strike" under this provision because Krivec's claims when provided with the undisputed facts are frivolous.

### B.  Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in
> the district-court action, or who was determined to be
> financially unable to obtain an adequate defense in a
> criminal case, may proceed on appeal in forma pauperis
> without further authorization, unless:
> (A) the district court-before or after the notice of appeal is
> filed-certifies that the appeal is not taken in good faith or
> finds that the party is not otherwise entitled to proceed in
> forma pauperis and states in writing its reasons for the
> certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not

be taken in forma pauperis if the trial court certifies in writing that it

is not taken in good faith."  The good faith standard is an objective one.

See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A plaintiff

satisfies the "good faith" requirement if he or she seeks review of any

issue that is "not frivolous."  Gardner v. Pogue, 558 F.2d 548, 551 (9th

Cir. 1977) (quoting Coppedge, 369 U.S. at 445).  For purposes of section

1915, an appeal is frivolous if it lacks any arguable basis in law or fact.

Neitzke, 490 U.S. at 325, 327; Franklin v. Murphy, 745 F.2d 1221, 1225

(9th Cir. 1984).  "[T]o determine that an appeal is in good faith, a court

need only find that a reasonable person could suppose that the appeal

has some merit." <u>Walker v. O'Brien</u>, 216 F.3d 626, 631 (9th Cir. 2000).

The frivolous nature of Krivec's claims, in light of the undisputed evidence, is so clear no reasonable person could suppose an appeal would have merit.  Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

### C. Address Changes

At all times during the pendency of this action, Krivec SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendants' Motion for Summary Judgment (Court Doc. 21)

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT -
CV-09-00075-BLG-RFC-CSO / PAGE 26

should be **GRANTED**.

2.  The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.  The Clerk of Court should be directed to have the docket reflect that the dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Krivec's claims are frivolous in light of the undisputed medical evidence.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A) that any appeal of this decision would not be taken in good faith.  The record makes plain the instant Complaint is frivolous as it lacks arguable substance in fact.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Krivec may serve and file written objections to this Findings and Recommendation within

fourteen days of the date entered as indicated on the Notice of

Electronic Filing.  Any such filing should be captioned "Objections to

Magistrate Judge's Findings and Recommendation."

A district judge will make a de novo determination of those

portions of the Findings and Recommendation to which objection is

made.  The district judge may accept, reject, or modify, in whole or in

part, the Findings and Recommendation.  Failure to timely file written

objections may bar a de novo determination by the district judge and

may waive the right to appeal the District Court's order.   Martinez v.

Ylst, 951 F.2d 1153 (9th Cir. 1991).

This is not an order that is immediately appealable to the Ninth

Circuit Court of Appeals.  Any notice of appeal pursuant to

Fed.R.App.P. 4(a)(1), should not be filed until entry of the District

Court's final judgment.

DATED this 2nd day of September, 2010.


/s/ Carolyn S. Ostby
United States Magistrate Judge


FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT -
CV-09-00075-BLG-RFC-CSO / PAGE 28